UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PEAK,

        Plaintiff,

v.                                  Case No. 09-13762
                                  Honorable Patrick J. Duggan

KUBOTA TRACTOR CORPORATION
and KUBOTA MANUFACTURING OF
AMERICA,

        Defendants.

_____/

## OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY FROM GARY A. DERIAN, P.E. AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this products liability action after he was injured while using a tractor and front loader designed and manufactured allegedly by Defendants.[1]  In his Complaint, Plaintiff asserts the following claims against Defendants: (I) design defect; (II) manufacturing defect; (III) failure to warn; (IV) breach of express warranty; (V) breach of implied warranty; (VI) negligence and/or gross negligence; (VII) misrepresentation; and (VIII) marketing defect based on a failure to warn.  The matter presently is before the Court on Defendants' motion to exclude the proposed testimony of Plaintiff's expert, Gary A. Derian, P.E., filed December 14, 2012 pursuant to

---

[1]Defendants indicate that the actual manufacturer of the tractor is Kubota Industrial Equipment, Inc. ("KIE").  (ECF NO. 39 at 8 n.1.)  Defendants further indicate that they have offered to allowed Plaintiff to substitute KIE for Kubota Manufacturing of America. (*Id*.)  As of this date, however, no substitution has been made.

Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and Defendants' motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 initially on November 16, 2011.

The Court believes that oral argument will not aid in its disposition of the pending motions and therefore is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court denies Defendants' motion to exclude Mr. Derian's testimony and grants in part and denies in part their summary judgment motion.

## I.      Factual and Procedural Background

Plaintiff has owned a tractor and front loader dating back to 1996 or 1997. The first four or five tractor/loader combinations that he owned were manufactured by Ford Motor Company. In 2002, Plaintiff bought his first Kubota tractor/loader combination. He replaced the equipment with another Kubota tractor/loader combination in 2005, and then again in 2007. The combination Plaintiff purchased in 2007 is the equipment at issue in this litigation: a Kubota tractor Model M5040HD and a loader Model LA1153.

Plaintiff used the tractor with the loader and other attachments to operate a business and to do work on his previously owned 13-acre property in North Branch, Michigan. On May 19, 2008, Plaintiff planned to use the tractor/loader combination to move large "rocks" on his property from the side a barn to a nearby concrete slab.[2] As he

---

[2]In his deposition, Plaintiff described the "rocks" as being between 100 to 150 pounds and about two feet in diameter. (ECF No. 59 Ex. I at 92.)

picked up the rocks, the barn was in front of him and the slab of concrete was behind him.
Therefore, he planned to travel in reverse after lifting the rocks to a position where he
could deposit them on the slab.

First Plaintiff scooped three rocks into the bucket attached to the front loader and
then pulled back on the loader's controller lever to raise the bucket enough to clear the
ground for travel. He claims that he released the controller lever, which should have
caused the lever to return to the "neutral" position and for the boom on the loader to stop
moving. Plaintiff then turned his head and body clockwise to look behind him as he
drove the tractor backwards toward the slab. Unbeknownst to Plaintiff, the controller
lever did not release and the boom continued to rise to a height that enabled the rocks to
fall out of the bucket and onto Plaintiff. Plaintiff testified during his deposition in this
case that he did not hear the hydraulics on the loader boom continuing to work as this was
"a new, powerful, quiet-running tractor."[3]  (ECF No. 59 Ex. I at 102.)  He further testified
that, prior to this occasion, he had never experienced the controller lever failing to return
to the neutral position or sticking in the up or down position after it was released.  (*Id*. at
109; *see also id*. at 122.)

One rock hit Plaintiff on his left cheek, breaking a bone in his face. Another rock
landed on Plaintiff's left femur, breaking or smashing it. The rocks damaged the hood

---

[3]A demonstration video that Plaintiff created after the accident reveals that the
motor of the tractor is *not* quiet; however, the hydraulics that lift and lower the boom and
the actual boom are quiet (or at least cannot be discernibly heard over the noise of the
tractor motor).  (*See* ECF No. 59 Ex. C.)

and front of the tractor, as well.  Plaintiff was knocked unconscious.  Neighbors called emergency personnel who transported Plaintiff to the hospital, where he was treated and underwent surgery to insert a steel plate in his leg.

Plaintiff was released from the hospital six or seven days following the accident. Days later, on or about May 29, 2008, he made a demonstration video showing how the controller lever on the subject tractor/loader fails to return to the neutral position when released, causing the boom to continue to rise or lower.  (ECF No. 39 Ex. C.)  On or about that date, Plaintiff took the tractor/loader to Summit Power Center in Sandusky, Michigan for repair.  He claims that he requested the return of any replaced parts and this is reflected on Summit's Repair Order Invoice.  (ECF No. 49 Ex. I at 116; ECF No. 47 Ex. 6.)  Summit contacted Kubota to inspect the tractor/loader combination and advise on whether it would authorize repairs under the warranty.

According to Defendants' warranty records, Summit's service technician found "the plungers on the single lever control sticking on the lever itself."  (ECF No. 59 Ex. K at KUBOTA001343.)  The warranty records indicate that the technician lubricated "the plungers and the valve seem[ed] to work fine", although Kubota still authorized the replacement of the entire controller level mechanism and the warranty records identify it as a "Failed Part."  (*Id*. at 001343, 001331.)  Kubota also repaired all of the physical damage to the tractor caused by the falling rocks.  (*Id*.)  The original controller level mechanism was not returned to Plaintiff or retained.

In June or July 2008, the tractor/loader combination was returned to Plaintiff and

4

he used it without incident until sometime in Spring 2010.  At that time, he again experienced problems with the controller level not returning to the neutral position when it was released, although this time it stuck in both the raise and lower positions.  (*Id*. Ex. I at 120-21.)  Plaintiff took the tractor/loader combination to another dealer, Rosy Brothers, Inc., in Dryden, Michigan.  Plaintiff informed Defendants of the continued problem and Defendants' and Plaintiff's experts thereafter inspected the controller lever assembly at Rosy Brothers.

In the meantime, Plaintiff had filed this lawsuit against Defendants on September 23, 2009.  On November 16, 2011, Defendants filed the pending motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 39.)  Defendants' primary argument in their motion is that Plaintiff lacks expert evidence to support his product liability claims.  On the same date that they filed their motion, Defendants moved to bar Plaintiff from introducing expert testimony based on his failure to produce expert reports pursuant to Federal Rule of Civil Procedure 26.  (ECF No. 40.)  On January 25, 2012, the Court denied Defendants' Rule 26 motion and permitted the parties to complete expert discovery.  (ECF No. 54.)  As part of its order, the Court granted Defendants leave, once expert discovery was complete, to supplement their summary judgment motion and/or file a motion to preclude the testimony of Plaintiff's proposed liability expert, Gary A. Derian.

On December 14, 2012, Defendants filed a motion to exclude Mr. Derian's testimony and a supplemental brief in support of their summary judgment motion.  (ECF.

Nos. 59, 60.)  Plaintiff filed a response to the former motion on December 18, 2012, and a response to Defendants' supplemental brief on January 4, 2013.  (ECF Nos. 62, 64.)  The motions have now been fully briefed.

## II.      Summary of Defendants' Rule 56 Motion and Claims to be Resolved

In their motion for summary judgment, Defendants argue that Plaintiff lacks evidence to support the claims asserted in his Complaint.  Defendants further seek a ruling that the ceiling on any noneconomic damages is the lower statutory cap under Michigan Compiled Laws § 600.2946a(1) because, Defendants argue, there is no evidence of gross negligence and Plaintiff cannot demonstrate a "permanent loss of a vital bodily function."

In his responses to Defendants' motion and supplemental brief in support of the motion, Plaintiff fails to address Defendants' arguments concerning his manufacturing defect, breach of express warranty, and misrepresentation claims (Counts II, IV, and VII, respectively).  The Court therefore assumes that Plaintiff is abandoning those claims and will not address them in this decision.  Plaintiff concedes in his response to Defendants' motion that his negligence claim in Count VI must be dismissed.[4]  (ECF No. 47 at 20.) Accordingly, the Court will not address that claim either.  Thus the only claims the Court will address herein are Plaintiff's design defect (Count I), failure to warn (Counts III and VIII), implied warranty of merchantability (Count V), and gross negligence (Count VI)

_____

[4]Count VI, however, also alleges gross negligence.

6

claims.

Defendants argue that Plaintiff's design defect and breach of implied warranty of merchantability claims are subject to dismissal because he continues to lack admissible expert testimony to satisfy their elements.  Defendants raise the same argument, as well as others, in support of their motion to dismiss Plaintiff's failure to warn and gross negligence claims.  Therefore, the first issue the Court must address is whether Plaintiff has admissible expert testimony to support his claims or whether the testimony of his expert, Mr. Derian, should be excluded (as argued by Defendants in their pending *Daubert* motion).

## II.    Whether Mr. Derian's Expert Testimony Should be Excluded Under Federal Rule of Evidence 702 and/or *Daubert*

In their motion to exclude Mr. Derian's testimony, Defendants argue first that he is not qualified to offer opinions on the design of agricultural equipment.  Second, Defendants argue that his opinions are not reliable due to his lack of experience with the type of equipment at issue, the absence of data necessary to support his opinions, and "the minimal and shallow work he has performed on this case, including the lack of testing on his theory."  (ECF No. 59 at 2.)

### A.    Mr. Derian's Expert Opinion

In his Rule 26 expert report, Mr. Derian opines in part:

The distortion of the grooves in the controller block caused the spherical ends of the cables and the fulcrum to wedge.  The grooves were distorted causing the pressure angle between the groove and the ball to become very low.  This low angle caused the balls to wedge into the groove and stick,

7

holding the control valve into an active position even when the operator would release the control lever.

The fact that the controller would stick both before and after it was cleaned and lubricated indicates that a lack of maintenance can be ruled out as a cause of Peak's injuries.

This defective design caused Peak's injuries.

The steel controller used by Kubota on the front loader is designed with a spherical ball captured in a straight groove. This creates a line contact in the groove which is an inherently poor design. A line contact has very high contact stress and will cause distortion in the groove.

A ball and socket joint, such as those used by Massey Ferguson and New Holland [makers of competitive tractor/loader combinations] are not subject to the distortion and sticking that caused Peak's injury. A ball and socket joint has a much larger area of contact than a ball and a groove. . . .

(ECF No. 59 Ex. R at 3.)

## B.     Applicable Law

Federal Rule of Evidence 702 addresses the admissibility of expert witness

testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable, principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The United States Supreme Court has interpreted the rule as imparting a "gatekeeping" responsibility on district courts to exclude unreliable and irrelevant expert testimony from trial.  *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2798).  Stated differently, Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2799.  The trial court must "undertake 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"  *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 302 (6th Cir. 1997) (quoting *Daubert*, 509 U.S. at 592-93, 113 S. Ct. at 2796-97) (additional quotation marks and citation omitted).

The considerations for making these two determinations– reliability and then relevance of the expert's opinion testimony– were summarized by the Sixth Circuit in *Smelser:*

> First, the court is to determine "whether the experts' testimony reflects 'scientific knowledge,' whether their findings are 'derived by the scientific method,' and whether their work product amounts to 'good science.'" *Daubert* (on Remand), 43 F.3d [1311] at 1315 [(9th Cir. 1995)] (quoting Daubert, 509 U.S. at 590, 593, 113 S.Ct. at 2795, 2797). An expert opinion that is based on scientifically valid principles will satisfy Fed. R. Evid. 702; an expert's subjective belief or unsupported speculation will not. *Daubert* (on Remand), 43 F.3d at 1316.

> Second, the court "must ensure that the proposed expert testimony is relevant to the task at hand." *Id.* at 1315. The Supreme Court referred to this as the "fit" requirement. *Id.* When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to

> examine "not the qualifications of a witness in the abstract, but whether
> those qualifications provide a foundation for a witness to answer a specific
> question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert.
> denied*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). The trial
> court must determine whether the expert's training and qualifications relate
> to the subject matter of his proposed testimony.
>
> When considering reliability, the trial court must focus on the soundness of
> the expert's methodology and not the correctness of his conclusions.
> *Daubert* (on Remand), 43 F.3d at 1318.

*Smelser*, 105 F.3d at 303.  The *Daubert* Court provided a non-exhaustive list of factors

relevant to the "reliability" inquiry:

> (1) whether a theory or technique can be (and has been) tested, (2) whether
> the theory or technique has been subjected to peer review and publication,
> (3) the known or potential rate of error in using a particular scientific
> technique and the existence and maintenance of standards controlling the
> technique's operation, and (4) whether the theory or technique has been
> generally accepted in the particular scientific field.

*Daubert*, 509 U.S. at 593-94, 113 S. Ct. at 2796.

### C.    Analysis

Defendants first argue that Mr. Derian is not qualified to opine about the design of

the subject front loader because he lacks education, training, and experience related to

agricultural equipment, in general, and front loaders, in particular.  Mr. Derian has not

authored any published articles in professional journals or treatises regarding agricultural

equipment, has never been involved in the design or testing of agricultural equipment, has

limited experience operating agricultural equipment, and has served as an expert in few

cases involving agricultural equipment.

However, Mr. Derian's opinion in this case relates to the mechanical design of the

10

controller lever, specifically the use of a spherical ball in a straight groove rather than a ball and socket.  The Court believes that his degree in mechanical engineering renders him qualified to offer an expert opinion regarding this design and its defects.  His lack of experience with agricultural equipment does not disqualify him from testifying and can be pointed out by Defendants on cross-examination to the extent they believe it undermines the value of his testimony.

Defendants also argue, however, that Mr. Derian's opinions are not reliable because they were not tested or subjected to peer review and publication.  Defendants point out that Mr. Derian did not test their design to support his theory that the use of a spherical ball in a straight groove joint causes the joint to wear out to a point that it sticks or to determine the amount of force needed to deform the block.  Mr. Derian also did not test the front loaders he identified that use a ball and socket joint to demonstrate that such a design is superior to that used by Kubota.

Mr. Derian's opinions, however, are premised on basic, well-established mechanical engineering principles concerning contact mechanics.  According to Plaintiff, these concepts or theories have been tested for hundreds of years, are published in hundreds of mechanical engineering textbooks, and are taught in entry-level college engineering classes worldwide.  While Mr. Derian could not examine the controller lever involved in the accident (as it was not retained by Defendants) to verify whether it was deformed, he was able to inspect the replacement part that exhibited the same sticking problem and manifested the deformity he opined is caused by the line contact.  Mr.

11

Derian did not necessarily need to examine New Holland's and Massey Ferguson's equipment to form the opinion that the ball and socket joint used in their equipment causes less friction.  Defendants' challenges to Mr. Derian's opinion– for example, that notes suggest that the original lever worked once lubricated, his failure to conduct tests to determine the force needed to cause the deformation, and his lack of testing– do not render his opinions unreliable or irrelevant.  Rather they go to the weight of his opinions.

For these reasons, the Court does not believe that Mr. Derian should be precluded from offering his expert opinions in this case.  The Court therefore is denying Defendants' motion to exclude his testimony.

## III.   Analyzing Defendants' Summary Judgment Motion

### A.      Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

12

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must cite "to particular parts of materials in the record [supporting the assertion], including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

**B.      Applicable Law and Analysis**

Plaintiff's claims are based on product liability theories.  To establish a *prima facie* case of product liability, a plaintiff must show "that the defendant supplied a product that was defective and that the defect caused the [plaintiff] injury."  *Auto Club Ins. Ass'n v. Gen. Motors Corp.*, 217 Mich. App. 594, 604, 552 N.W.2d 523, 527 (1996).  The plaintiff bears the burden of proof.  *Skinner v. Square D Co.*, 445 Mich. 153, 159, 516 N.W.2d

13

475, 478 (1994). However,

> the plaintiff is not required to produce evidence that positively eliminates every other potential cause [of his or her injury]. Rather, the plaintiff's evidence is sufficient if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support.

*Id.* at 159-60, 516 N.2d at 478. The plaintiff's case may be proven through direct or circumstantial evidence. *Auto Club Ins. Ass'n*, 217 Mich. App. at 604, 552 N.W.2d at 527. One judge in this District has summarized the plaintiff's burden when relying on circumstantial evidence to prove his or her case as follows:

> "While plaintiffs may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation." [*Skinner*, 445 Mich. at 164, 516 N.W.2d at 480]. Thus, "causation theories that are mere possibilities or, at most, equally as probable as other theories" are simply insufficient. *Id.* at 484. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation"; "the plaintiff must present substantial *evidence* from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 480 (emphasis added). And, where an expert opinion is used to establish causation such an "opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 342 (E.D. Mich.1995) (quoting Daubert, 509 U.S. at 590, 113 S. Ct. 2786 (1993)). Thus, the expert's conclusions regarding causation must have a basis in established fact and cannot be "premised on mere suppositions." *Skinner*, 516 N.W.2d at 484.

*Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 769 (E.D. Mich. 2010) (Edmunds, J.).

### 1.     Design Defect Claim (Count I)

14

To demonstrate a design defect claim, Michigan law requires a plaintiff to show that: (1) the product was not reasonably safe for its foreseeable uses when it left the control of the manufacturer; and (2) a feasible, alternative design was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to its users.  Mich. Comp. Laws § 600.2946(2).  Expert testimony generally is required to demonstrate a design defect.  *See Owens v. Allis–Chambers Corp.*, 414 Mich. 413, 430, 326 N.W.2d 372, 379 (1982).  Defendants rest their summary judgment motion with respect to Plaintiff's design defect claim on their argument that the testimony of Plaintiff's expert, Mr. Derian, should be excluded. Because the Court has concluded that Mr. Derian will be able to testify, it finds no basis to grant summary judgment to Defendants on this claim.

## 2.      Failure to Warn Claims (Counts III and VIII)

Counts III ("failure to warn") and VIII ("marketing defect") of Plaintiff's Complaint are based on Defendants' alleged failure to warn of a known danger (i.e. that the boom of the loader suddenly and unexpectedly would continue moving and release the load on the driver).  (*See* Pl.'s Compl. ¶¶ 22-23, 48.)  A plaintiff alleging a breach of a duty to warn must show that a manufacturer or seller (1) had actual or constructive knowledge of the alleged danger, (2) had no reason to believe that consumers would know of this danger, and (3) failed to exercise reasonable care to inform consumers of the danger.  *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) (citing *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 741 (6th Cir. 2000) (citing *Glittenberg*

15

*v. Doughboy Recreational Indus.*, 441 Mich. 379, 389-90, 491 N.W.2d 208, 212-13 (1992)).  A defendant is not liable for the failure to warn of a danger "that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action."  Mich. Comp. Laws § 600.2948(2).

Defendants raise three arguments in support of their request for summary judgment with respect to Plaintiff's failure to warn claims:

> (a) there is no evidence of a sticking problem being common with the controller model at issue, and/or that Kubota knew of any such alleged problem before the subject loader left Kubota's control; (b) Plaintiff was a sophisticated user of the subject equipment, and Kubota otherwise owed no duty to warn him of the common-sense risk at issue– that objects in the loader bucket could fall out of the bucket and onto the operator causing death or serious injury; and (c) Kubota nevertheless did warn Plaintiff of the risk at issue.

(*See* ECF No. 39 at 16-17.)  The Court finds no merit to Defendants' second and third arguments, as those arguments are premised on the risk of objects falling from the loader bucket, rather than the risk that the controller lever would fail to return to neutral when released, causing the boom to continue rising to a point *where* objects could fall from the loader bucket.  While the risk of objects falling from the bucket when in a raised position may be obvious to most users, the Court cannot conclude that even a sophisticated user of the subject equipment would be aware of the risk that the controller lever would stick in the raised position when released, as Plaintiff claims. As discussed in the previous

16

section, Plaintiff also has evidence to create a genuine issue of material fact with respect
to whether there was a design defect.  Thus the Court will focus on the second half of
Defendants' first argument: whether Defendants had actual or constructive knowledge of
the defect.

Plaintiff relies on the following to show that Defendants had actual or constructive
knowledge of the alleged design defect: (1) Mr. Derian's opinion that a simple
Foreseeable Use Analysis and/or systematic analysis tool would have revealed this defect;
(2) Defendants' alleged knowledge of the designs used by its competitors; and (3) a
lawsuit filed against Kubota Tractor Corporation and other entities in Arkansas state court
involving "the exact same failure" where the plaintiff was injured approximately two
years before Plaintiff's accident, *Mallet et al. v. Kubota Tractor Corp., et al.*, No.
CV2009-304-3 (Boone Cnty. Cir. Ct, Ark.).  (*See* ECF No. 47 at 20-21, citing Ex. 10 at 3-
4; Ex. 16.)

Plaintiff fails to present evidence of a design analysis conducted by Defendants
making them aware of the alleged defect or to show that Defendants were aware of the
alternative design used by competitors.  Moreover, Plaintiff does not point to evidence
showing that any competitor's alternative design was in use when Defendants distributed
the subject equipment.  Finally, even though the plaintiff in *Mallet* was injured in 2006
(*see* ECF No. 47 Ex. 16 ¶ 11), public records available through the Boone County Circuit
Court website indicate that the lawsuit was filed against Kubota only in December 2009–

after Plaintiff's May 2008 accident.[5]

The Court therefore concludes that Plaintiff fails to present evidence to create a genuine issue of material fact as to whether Defendants had actual or constructive knowledge of the alleged design defect of which it had a duty to warn Plaintiff. As such, Defendants are entitled to summary judgment with respect to Plaintiff's failure to warn claims (Counts III and VIII).

### 3.    Implied Warranty of Merchantability Claim (Count V)

Defendants contend that they are entitled to summary judgment with respect to this claim because Plaintiff lacks expert evidence to show that the front loader was defective when it left their control. For the reasons set forth as to Plaintiff's design defect claim, it rejects Defendants' argument.

### 4.    Gross Negligence Claim (Count VI)

Under Michigan law, "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." Mich. Comp. Laws § 600.2945(d). In their motion, Defendants argue that there is no evidence that they engaged in such conduct. Plaintiff argues in response that Defendants' knowledge of the design defect supports this claim. (ECF No. 47 at 20.) As discussed above, however, Plaintiff fails to present evidence to raise a question of fact as to whether Defendants were aware of the alleged design defect. The Court therefore grants summary judgment

---

[5]The case number for the *Mallet* litigation, CV2009-304-3, itself is an indicator that the lawsuit was filed after Plaintiff's injury.

to Defendants with respect to Plaintiff's gross negligence claim.

### 5.    NonEconomic Damages

Michigan law caps the amount of noneconomic damages recoverable in a products

liability action as follows:

> In an action for product liability, the total amount of damages for
> noneconomic loss shall not exceed $280,000.00, unless the defect in the
> product caused either the person's death or permanent loss of a vital bodily
> function, in which case the total amount of damages for noneconomic loss
> shall not exceed $500,000.00.

Mich. Comp. Laws § 600.2946a(1).  The statute sets forth an exception to the cap where

there is proof of gross negligence.  *Id*. § 600.2946a(3).  Defendants argue that because

Plaintiff did not suffer death or permanent loss of a vital bodily function and lacks

evidence to show grossly negligent conduct, his noneconomic damages are capped at

$280,000.00.

In response, Plaintiff relies on Defendants' alleged knowledge of the defect to

demonstrate that their conduct was grossly negligent and further asserts that he "clearly

suffered a permanent loss of a vital bodily function in that his leg will never be the same."

(ECF No. 47 at 21.)  Again, Plaintiff fails to present evidence to support his gross

negligence claim. To support his claimed permanent loss of a vital bodily function,

Plaintiff refers the Court to the factual background section of his response brief.  (*Id*.)

There, the discussion of his injuries is limited to the following:

> Plaintiff Peak quite clearly testified that the rock hit him so hard that it
> broke a bone in his left cheek and rendered him unconscious. . . . One of the
> boulders also landed on his left femur and severely smashed it. . . . Attached

19

hereto are x-ray films of Plaintiff's left femur which show the serious and devastating nature of the fracture to the same. Moreover, there are [sic] an excerpt of medical documents indicating that Plaintiff suffered from acute deep vein thrombosis as a result of this injury.

(*Id.* at 6, citations to exhibits omitted.)

The Michigan legislature did not define the term "permanent loss of a vital bodily function" in section 600.2946a and this Court has found no published opinions interpreting the phrase in the statute. However, the Michigan Court of Appeals has defined "los[s] of a vital bodily function" with respect to the damages cap in medical malpractice actions in *Lewis v. Krogol*, 229 Mich. App. 483, 582 N.W.2d 524 (1998), *appeal denied* 460 Mich. 851, 598 N.W.2d 632 (1999). The *Lewis* court held that the legislature intended the phrase to mean the loss of "bodily functions that are considered to have a high degree of importance" and that a trier of fact could reasonably conclude that walking is a vital bodily function. *Id.* at 489-90, 582 N.W.2d at 527. The court further held that the defendant was not entitled to summary disposition because the trier of fact also could "reasonably conclude" that the plaintiff "lost" this function where she testified:

> [T]hat she is in a wheelchair "basically the whole day, other than to transfer to the couch." She can walk seventy-five to one hundred feet if she has something "to hang onto." She uses a walker when she "goes in and out of doors." Her legs can hold her weight "for a short time."

*Id.* at 490, 582 N.W.2d at 527.

None of the evidence Plaintiff cites suggests that his ability to walk is impaired to the extent suffered by the plaintiff in *Lewis*. The x-rays and excerpts of his medical records attached to his response brief do not identify any limitations to any of his bodily

20

functions, much less any *permanent* loss to a *vital* bodily function.  (ECF No. 47 Ex. 5.)

However, the Court finds relevant evidence in the transcript of Plaintiff's deposition.[6]

(*See* ECF No. 59 Ex. I.) Specifically, Plaintiff testified that he experiences constant pain

in his leg since the accident.  (*Id*. at 138.)  Plaintiff rated the pain as generally a four or

five on a scale of ten, with the pain increasing when he does "anything extensive" and

decreasing when he takes pain medication.  (*Id*. at 138-39.)  A steel plate has been

inserted in his leg to hold his femur together and he needs a cane to walk unless he is

walking only a short distance.  (*Id*. at 110, 138.)

      The Court believes that a trier of fact could reasonably find that Plaintiff's need to

use a cane to ambulate and continuous pain resulting from his injury reflect "permanent

loss of a vital bodily function."  *See Makki v. OSI Sealants, Inc.*, Nos. 06-14328, 06-

14329, 2008 WL 4378158, at *2 (E.D. Mich. Sept. 23, 2008) (finding sufficient evidence

to create a jury question as to whether the plaintiff lost his ability to walk where he used

an orthopedic boot and cane to ambulate, suffered pain, and experienced diminished

strength and range of motion).  Thus while Plaintiff fails to present evidence of gross

---

[6]A court need not search the entire record to determine whether there is a genuine
issue of material fact; rather, the party responding to a summary judgment motion must
identify the specific evidence that defeats the motion.  *See* Fed. R. Civ. P. 56(c)(1);
*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996) (citing *Street v. J.C.
Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has
the duty to search the entire record to establish that it is bereft of a genuine issue of
material fact.").  Nevertheless, this Court does not believe that it can ignore relevant
evidence of which it becomes aware simply because counsel failed to identify it or that it
is precluded from reviewing and considering portions of the record not identified by a
party.

negligence to avoid any cap under section 600.2946a, the Court finds a genuine issue of material fact as to whether the lower or higher statutory cap applies here.

## IV.   Conclusion

To summarize, the Court finds that Gary A. Derian is qualified to render his expert opinions in this matter and that his opinions are reliable.  As such, he is not precluded from testifying under Federal Rule of Evidence 702 or *Daubert*.  The Court also finds that Plaintiff has abandoned his claims alleging a manufacturing defect (Count II), a breach of express warranty (Count IV), and misrepresentation (Count VII), due to his failure to respond to Defendants' arguments in support of summary judgment as to these claims. Plaintiff concedes that his negligence claim must be dismissed.  As to Plaintiff's remaining claims, Defendants fail to set forth a viable argument for dismissal of his design defect (Count I) and implied warranty of merchantability (Count V) claims and the Court finds a genuine issue of material fact with respect to whether the lower or higher statutory cap on noneconomic damages applies.  Plaintiff, however, fails to present evidence to create a genuine issue of material fact with regard to his claims alleging a failure to warn (Counts III and VIII) and gross negligence (Count VI).

Accordingly,

**IT IS ORDERED**, that Defendants' motion to exclude the proposed expert testimony of Gary A. Derian, P.E. is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** in that Counts II-IV and VI-VIII are

22

**DISMISSED WITH PREJUDICE** and the Court concludes that Plaintiff's

noneconomic damages are statutorily capped under Michigan Compiled Laws

§ 600.2946a(1).

Dated: February 15, 2013                s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE


Copies to:
Timothy M. Lessing, Esq.
Kelli A. Bennett, Esq.
Daniel J. Scully, Jr., Esq.
Paul E. Scheidemantel, Esq.